UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. THOMAS HUBBARD, PhD, <br><br> *Plaintiff*, <br><br> v. <br><br> HOLLIE GREEN, <br><br> *Defendant*. | Case No. 1:20-cv-1140 |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Dr. Thomas Hubbard, PhD ("***Dr. Hubbard***" or "***Plaintiff***") and files his Complaint ("***Complaint***") against Hollie Green ("***Green***" or "***Defendant***") and would respectfully show as follows:

### JURISDICTION AND VENUE

1. Defendant is subject to jurisdiction in Texas because Defendant is domiciled in Texas and/or Defendant committed a tort in Texas. Venue is appropriate because Defendant committed the actions complained of herein in Travis County, Texas.

2. Subject matter jurisdiction is appropriate because the amount in controversy exceeds $75,000.00 including all damages and attorneys' fees. In addition, there is complete diversity of citizenship because Plaintiff is domiciled in California and, on information and belief, Defendant is not domiciled in the State of California.

### PARTIES

3. Plaintiff is a natural person who is a permanent resident and citizen of the State of California. He may be served through the undersigned counsel of record.

4.     Defendant Green is a natural person who is a permanent resident and citizen of the State of Texas.  She may be served with process wherever she may be found.

## FACTUAL BACKGROUND

5.     Dr. Hubbard is a longstanding full-time member of the faculty of the Classics Department of the University of Texas at Austin, and a faculty affiliate of the Center for Women's and Gender Studies.  In the Fall of 2019 his career and reputation were attacked by the same mob violence and mob "justice" currently sweeping the land.  Defendants ultimately participated as a member of the libel/slander mob seeking to "cancel" Dr. Hubbard based on lies.

6.     Green was a student at the University of Texas at Austin during the relevant time frame.

7.     On approximately November 19, 2019, Green, authored and caused to be published the document attached hereto as Exhibit A (the "***Google Survey***"), which was circulated to multiple third parties.  Dr. Hubbard did not learn of this Google Survey until January 2020.  However, the survey was apparently linked (along with a cache of other materials concerning Dr. Hubbard) to Green's feed on Twitter.  *See* Exhibit. B (the "***Linking Tweet***").  The Linking Tweet and the Google Survey contained a link to filed supposedly cataloguing Dr. Hubbard's "history of rape and pedophilia advocacy" ("***Linked Material***").

8.     Prior to this, on November 18, 2020, Green had sent out a Tweet from her account @1998holliegreen dated (*see* Exhibit C, the "***Sex Tweet***" and, collectively, the "***Publications***") in which Green stated that Dr. Hubbard "required students to write abt

personal experiences of sexual assault to see whether they were 'really' rape or just 'bad sex.'"

9. These Publications contain numerous false statements of fact of and concerning Dr. Hubbard.

10. First, he was tenured in 1993, not 2008. He was promoted to full professor in 1998. The fact that Green got these basic dates wrong shows how careless and inept she was in authoring the document.

11. Also, the Publications claim Dr. Hubbard is an "Associated Individual" of NAMBLA. This has already been refuted and proven to be a hoax and an erroneous Wikipedia link that Green cited has since been removed from Wikipedia.

12. The Publications also that Dr. Hubbard's course "Mythologies of Rape" (not "Mythology of Rape" as Green incorrectly cited) was banned after one semester, which is also false. The course was not "banned" or in any way censured by the University of Texas.

13. The Publications also contain a link to https://www.insidehighered.com/news/2009/06/11/et-tu-new-publisher as evidence of Green's false claims that Dr. Hubbard promotes pedophilia and child sexual abuse, but that cite nowhere mentions the word "pedophilia" or the phrase "perceived to promote child sexual abuse" as Green suggests. The fuller quote is as follows: "It looks at such relationships in a historical context – looks at other cultures […] It also allows for the possibility–and in fact these possibilities do exist–that certain of these relationships may not be harmful to the boys. But that's done within carefully construed parameters." Green's Publications fails to mention the fact that the American Philological Association

did intervene on behalf of the complainants of Dr. Hubbard's work and the collection eventually was published, and is now distributed by Taylor & Francis.

14.     In reference to the allegedly "banned" course Dr. Hubbard taught called "Mythologies of Rape," Green claimed that Dr. Hubbard stated that "female students are often too objective [*sic*] to study rape academically."  Yet none of Green's alleged "sources" substantiate this false claim.

15.     The Publications also quote Dr. Hubbard, but include a parenthetical insertion, that Dr. Hubbard is referring to "pedophilic relationships", which is completely false.

16.     Also, the claim that Dr. Hubbard "required students to write abt personal experiences of sexual assault to see whether they were 'really' rape or just 'bad sex" is untrue, as the written text of the paper assignment will prove and is just another lie to embellish Green's false narrative.

17.     Tellingly, some of the links contained in the Publications were withdrawn by their author, likely out of recognition that the false assertions relied on by Green were unverified, false, and defamatory.

18.     Green's Publications give the defamatory impressions that Dr. Hubbard advocates for pedophilia, that he supports rape and criminal sexual conduct against minors, that he required his students to ponder on whether their own sexual assaults were "really just bad sex", and that the culmination of Dr. Hubbard's "controversies" culminated in one of his courses being "banned" for containing curriculum containing these elements.

19.     These are lies.  Dr. Hubbard does not have a "history of pedophilic and rape advocacy," as Green falsely claims.  Dr. Hubbard has never advocated or condoned either pedophilia or rape.   His  scholarship  does  not  even  concern  pedophilia,  which  all

dictionaries define as persistent attraction to pre-pubescent children, but the entirely different historical phenomenon of Greek pederasty, which pertains to adolescent males. To confuse such basic terminology is irresponsible and defamatory.

20. And even with respect to pederasty, Dr. Hubbard has never advocated for its commission, but rather to understand it in the context of the Ancient Greeks.

21. In summary, the Publications complained of herein expressly and/or impliedly through juxtaposition, context, and innuendo, make the following false statements of fact of and concerning Dr. Hubbard:

    a. That Dr. Hubbard promotes, encourages, and/or advocates for the commission of pedophilia (adult sex with prepubescent children);

    b. That Dr. Hubbard's teaching and scholarship promotes, encourages, and/or advocates for the commission of pederasty (adult sex with sexually developed adolescent minors);

    c. That Dr. Hubbard teaches and engages in scholarship that requires sexual assault survivors to question whether their assaults were really just "bad sex" as part of classroom curriculum; and

    d. That Dr. Hubbard's teaching and scholarship caused the University of Texas at Austin to "ban" one of his classes.

22. Defendant's libel has caused significant damage to Dr. Hubbard. Following the publication of these statements, Dr. Hubbard's house was attacked and vandalized on December 9, 2019 by militants associated with an explicitly revolutionary organization (the Popular Women's Movement/Movimiento Femenino Popular) who spray-painted red graffiti on Dr. Hubbard's house in the form of bold letters spelling "CHILD RAPIST" and

a hammer and sickle.  Graffiti was also spray painted on a nearby store that threatened Dr. Hubbard's life.

23. Due to these events, Dr. Hubbard was forced to leave Austin, Texas and relocate to California.  He has suffered significant damages to his reputation, mental anguish, and emotional distress. He is unable to resume teaching in anything but an online format.

## CAUSES OF ACTION

## COUNT I

### Libel (*per se* and *per quod*)

24. Plaintiff realleges all of the preceding allegations as if fully stated herein.

25. Defendant published false statements of fact of and concerning Plaintiff, who is not a general purpose or limited purpose public figure.  Defendant acted with negligence as well as actual malice and/or reckless disregard for the truth the false statements of fact.  Alternatively, Defendant is strictly liable for the defamatory Publications.  The false statements of fact were defamatory of Plaintiff and caused reputational injury *per se* because they injured Plaintiff in his occupation as university faculty member who works with students.  The false statements also caused Plaintiff actual damages and mental anguish.

26. Plaintiff further seeks exemplary damages because Defendant's actions were committed with actual malice and/or reckless disregard for the truth.

## CONDITIONS PRECEDENT

27. All conditions precedent to Plaintiff's claims have occurred or have been waived.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a.  awarding actual, reputational, mental anguish, and exemplary damages;

b.  pre- and post-judgment interests and costs; and

c.  all other relief to which Plaintiff is entitled in law or equity.

Dated:  November 17, 2020.

        Respectfully submitted,

        CAMARA & SIBLEY LLP

        /s/ Joseph D. Sibley
        Joseph D. Sibley
        State Bar No. 24047203
        sibley@camarasibley.com
        Camara & Sibley LLP
        1108 Lavaca St
        Suite 110263
        Austin, TX 78701
        Telephone: (713) 966-6789
        Fax: (713) 583-1131

        **ATTORNEYS FOR PLAINTIFF**